UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

```
UNITED STATES OF AMERICA     )   DOCKET NO. 5:14-CR-81
                             )
        vs.                  )
                             )
ROGER DALE FRANKLIN,         )
                             )
          Defendant.         )
_____)
```

TRANSCRIPT OF INQUIRY TO COUNSEL
BEFORE THE HONORABLE DAVID C. KEESLER
UNITED STATES MAGISTRATE JUDGE
AUGUST 18, 2015

APPEARANCES:

On Behalf of the Government:

    STEVEN KAUFMAN, ESQ.
    United States Attorney's Office
    227 West Trade Street, Suite 1700
    Charlotte, North Carolina

On Behalf of the Defendant:

    HAAKON THORSEN, ESQ.
    Law Offices of Haakon Thorsen
    1235-E East Boulevard, #239
    Charlotte, North Carolina

Proceedings digitally recorded and transcribed by:

Cheryl A. Nuccio, RMR-CRR
Official Court Reporter
United States District Court
Charlotte, North Carolina

<u>P R O C E E D I N G S</u>

(Transcript of proceedings digitally recorded on August 18, 2015.)

THE COURT:  Okay.  Give me just a second here to take a look at a couple things.

(Pause.)

THE COURT:  Okay.  The next matter is Roger Dale Franklin.  The number on this is 5:14-cr-81.

Mr. Franklin, good morning.

THE DEFENDANT:  Good morning.

THE COURT:  Mr. Thorsen is here today representing Mr. Franklin and Mr. Kaufman is here for the government on this.  The matter is on for inquiry to status of counsel.  So let's -- let's take a step back before we drill down here and get a little -- get a little procedural background.

Mr. Kaufman, is this your case?

MR. KAUFMAN:  It is, Your Honor.

THE COURT:  Well, that's -- that's a convenient thing to have you here, then.  Would you mind telling me a little bit about this.

MR. KAUFMAN:  Yes, Your Honor.

THE COURT:  Procedurally, you know what I mean.

MR. KAUFMAN:  Sure.  Sure.  About five weeks ago Mr. Franklin went to trial.  He was convicted.  And we have not gotten the draft PSR just yet, but that would be the next

1  step in the process.

2          THE COURT:  What was he convicted of?

3          MR. KAUFMAN:  He was convicted of methamphetamine

4  trafficking, a ten to life charge.  There were, I think, a

5  couple of 924(c) convictions as well.  Actually, I've got the

6  verdict sheet here.

7          So he was convicted of 500 grams or more of meth in

8  the conspiracy.  He was convicted of counts two, three, four,

9  five, six -- so he was convicted on every count in the

10  indictment, Your Honor.

11          THE COURT:  Okay.  Thank you.  So we're in the

12  presentence phase.

13          MR. KAUFMAN:  Yes, Your Honor.

14          THE COURT:  Okay.  All right.  Mr. Thorsen, I have

15  your written motion which I have read a couple of times, and

16  it encloses a written statement purportedly by Mr. Franklin

17  which is pretty blunt.  Would you care to say anything about

18  this before I hear from him?

19          MR. THORSEN:  No, Your Honor.  Your Honor, I did

20  represent Mr. Franklin at trial and we are at the presentence

21  report.  And based on his acceptance of responsibility, what

22  he wrote on that, I wanted to bring it to the attention of the

23  court before I proceeded to represent him.  I, of course,

24  deny -- I will be denying that I lied to him as he indicates.

25          THE COURT:  Right.  Okay.  Mr. Franklin, the issue

1  for today is -- well, this is called an inquiry to counsel
2  hearing, so the issue for today is whether Mr. Thorsen will
3  continue to represent you as your case proceeds through the
4  presentence stage and on toward a sentencing hearing or
5  whether we would consider substituting another lawyer for him.
6  Perhaps I'm stating the obvious, but that's the issue for
7  today.  Do you understand?
8              THE DEFENDANT:  Yes.
9              THE COURT:  I have read the statement you made on
10  the document styled U.S. Probation Office Western District of
11  North Carolina Acceptance of Responsibility.  And it's -- it's
12  document number 41-1 and it's a matter of record so it's right
13  there for anybody to read if they care to, and I've read it
14  several times.
15              THE DEFENDANT:  I didn't know that that was going to
16  get to you, but I didn't know what to do to get rid of him.
17  But I could tell you why I want to get rid of him if you'll
18  listen to me for a minute.
19              During the trial he didn't do nothing to help me at
20  all.  He didn't do his job for one.  Nothing.  I tried to get
21  him to present a letter that one of the girls had wrote me
22  that said if I didn't give her a car that she wanted that
23  belonged to me, that she was going to testify in court that I
24  was a drug dealer, biggest drug dealer in the county.  She
25  said, I will bury you, you piece of shit.

1       Anyway, I tried to get him to present that letter
2  when she was on the stand.  He said we don't need to.  They
3  ain't proved you've done nothing.  They're going to dismiss
4  your charges.
5       And one of the officers -- the police officer got up
6  there and lied and it's right there in the discovery.
7  Discovery says one thing.  She gets on the stand, says
8  something else.  He won't say nothing about that.
9       They used hearsay evidence.  He wouldn't object to
10 that.  When one of the cops got up there and said this other
11 cop that ain't here told me that he dropped dope on the
12 ground, that's hearsay and he wouldn't object to that.  He
13 wouldn't do nothing.
14      And then I asked the judge to let me talk to him
15 because they wanted to know if I wanted to take the stand and
16 he was saying I wasn't going to take the stand.  I told the
17 judge -- he asked me had I discussed it with him.  I said I
18 need to discuss it with him because, you know, it looks to me
19 like I need to take the stand.  So we go in the back room and
20 we talk for 15 minutes.  I tell him this stuff.  You're not
21 doing nothing, you know.  I need to take the stand to defend
22 myself.
23      Oh, you don't need to take the stand.  You're going
24 to be okay.  They've not put any guns in your hand.  They've
25 not put any dope in your hand.  They're not going to convict

1  you.  They're going to let you go.

2         I said, Well, it don't look to me like they're going
3  to let me go.  It looks to me like you're hanging me.  We need
4  to do something.

5         Trust me.  He said, They're going to let you go.
6  When I get through with my closing argument, they're going to
7  dismiss the charges.  We don't need to put up no defense.

8         And I told him, I said, Well, it looks to me -- I
9  asked him four or five times, Are you sure you know what
10  you're talking about because it don't look good to me.  You
11  know, it looks to me like they're fixing to get me.

12         Oh, you're good.  You're good.

13         He's an idiot, you know what I'm saying.  He
14  wouldn't do nothing.  I don't want nothing to do with him.  I
15  don't want him around me.  I don't even want to be here next
16  to him.  He left me hanging.  He come up there and seen me
17  every three or four weeks telling me, oh, we're going to
18  trial, we're going to do this.  I told him what -- I told him
19  everything that happened.  And then he comes down here and he
20  throws me under the bus.

21         I don't want nothing to do with this idiot.  I'll do
22  it by myself if you can't give me another lawyer because he --
23  if I were to went in there by myself, I wouldn't have been in
24  the trouble that I'm in now.  And I don't want nothing else to
25  do with him.  If you don't want to give me another one, I'll

1   go it alone.  I don't want nothing to do with this idiot.

2            Excuse me, I'm sorry.  I didn't say nothing at the

3   trial.  I didn't know I was supposed to say anything.  If I

4   was a lawyer, I wouldn't have needed him to start with.  I

5   didn't know what to do.  I'm not a lawyer.  Now I'm facing the

6   rest of my life in prison because I had an idiot for a lawyer

7   in there.

8            THE COURT:  Let's just keep it -- we'll keep it

9   calm.

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  Okay.  I know we're all -- we're under a

12  lot of stress here.  I get that.  And I'm not trying to be --

13           THE DEFENDANT:  All right.

14           THE COURT:  I'm not trying to --

15           THE DEFENDANT:  Okay.  I'm done.  You get my point.

16           THE COURT:  I do.  I do.  I just want you to know

17  that I -- I understand that we're in a high stakes situation

18  here.

19           THE DEFENDANT:  Yes.

20           THE COURT:  But I just want to make sure that we all

21  stay calm.

22           Well, let me ask you a couple of questions that may

23  seem obvious to you, but I need to talk with you about.

24           Obviously, we've got some more work to do in the

25  case one way or the other.  There's more work to do.

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Do you think that you could work with

3   Mr. Thorsen to prepare for your sentencing hearing?

4        THE DEFENDANT:  I don't think I could.  Matter of

5   fact, I know I can't.  I know I can't.  I don't want to be

6   around him.

7        THE COURT:  All right.

8        Now, Mr. Franklin, I'm going to ask you a different

9   question and I would appreciate your candor.  I mean, if the

10  Court were to consider appointing another lawyer for you, I

11  mean, would you be open-minded about working with that lawyer?

12  You know, lawyers aren't always going to tell you what you

13  want to hear.  A new lawyer might tell you some things that

14  aren't good news either, you know?

15       THE DEFENDANT:  Yeah.

16       THE COURT:  Are you prepared to work with an open

17  mind with a new lawyer?

18       THE DEFENDANT:  Yes.  I couldn't get no worse than

19  this one.  Yeah.

20       THE COURT:  But you understand what I mean, right?

21       THE DEFENDANT:  Yes.  Yes.

22       THE COURT:  I mean, a new lawyer might look at your

23  case and some of what they tell you might be tough to hear.

24       THE DEFENDANT:  Yeah.

25       THE COURT:  But it would be a second look.

```
 1              THE DEFENDANT:  Yeah.
 2              THE COURT:  Do you understand that?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  And I'm not trying to hit you too hard
 5    here, but some of what's happened already is not good.
 6              THE DEFENDANT:  It --
 7              THE COURT:  I mean, you've been convicted of a
 8    number of serious offenses and so a new lawyer is not going to
 9    be able to wave a magic wand over all this.  A new lawyer
10    could give you a second look at it.
11              THE DEFENDANT:  Yeah.
12              THE COURT:  But you'd have to be realistic and
13    open-minded about what's possible.  Do you understand what I'm
14    saying to you?
15              THE DEFENDANT:  Yes, sir.  Yes.
16              THE COURT:  Okay.  Do you feel like the relationship
17    between the two of y'all is pretty much broken at this point?
18              THE DEFENDANT:  It's done, yeah.  I don't -- I can't
19    trust him.  I mean, he told me one thing and I had my hopes
20    built up.  We had a good chance of winning.  Then he went in
21    there and just (inaudible) didn't do nothing.  I shouldn't
22    have been found guilty.  I mean, maybe a conspiracy charge.
23    He didn't do anything to defend me.
24              THE COURT:  All right.  Have a seat.  Thanks.
25              Okay.  Mr. Thorsen, the point of any of that is --
```

1   and I don't mean this in any way disrespectfully to

2   Mr. Franklin.  The point of all that is not the truth of

3   what's been asserted but just the nature of the relationship

4   at this point.  It doesn't sound like you guys are going to be

5   able to work together going forward.  I mean, is that --

6           MR. THORSEN:  I think that's a good assessment, Your

7   Honor.

8           THE COURT:  Okay.  Can somebody tell me where we are

9   in the presentence process?  The trial was pretty recent, was

10  it not?

11          MR. THORSEN:  Your Honor, it's -- it was, yes.

12  July 8th was the verdict.  We have provided the -- I have

13  provided information to the probation office, the 21-day

14  forms.  And I have also informed them that there was going to

15  be a hearing on the status of counsel.

16          THE COURT:  Okay.  This is of little moment, but I

17  just have to ask.  I'm sometimes too curious.  Was there an

18  offer in this case; and if so, what was it?

19          MR. KAUFMAN:  There were offers.  There was an offer

20  that was outstanding for a very lengthy period of time.  And

21  there may have been different iterations of offers, but the

22  essential offer would have been a plea to the conspiracy count

23  in one, so the ten to life.  You know, the gun -- the 924(c)

24  would have been made into a two-level gun enhancement.

25          THE COURT:  Right.

1      MR. KAUFMAN:  And I'm sure that there were other
2  details; but in terms of the big picture, it was to plead to
3  count one.
4      THE COURT:  Okay.  Thank you.
5      Okay.  Well, I do want to be clear about what I'm
6  doing and why I'm doing it here.  The issue before the Court,
7  at least as I see it, is whether Mr. Thorsen can continue as
8  appointed counsel to Mr. Franklin at this point.  And I'm
9  simply applying the very familiar standard in *United States*
10 *versus Mullen*, and we're all familiar with that three-part
11 test.
12      I don't find that there is any particular need to
13 make any judgment here about what happened at trial or why.
14 That's sort of not the point.  The point is whether the
15 relationship at this point is so irretrievably broken, those
16 are my words, but that under the *Mullen* test, Mr. Thorsen
17 simply can't continue as Mr. Franklin's appointed lawyer.
18      And I'll also stir into the decision where the case
19 sits.  We're at a point where there's been a verdict at a
20 trial.  We're pretty early in the presentence proceeding.
21 We've not yet had a presentence report.  In other words, I
22 feel like this is a pretty good place for new counsel to be
23 inserted if we were thinking about doing that.
24      So without making any judgment about anybody and
25 making any criticism of any person, Mr. Franklin or

1  Mr. Thorsen or anybody else for that matter, I just think this

2  is probably the right time.  So the Court will find that it is

3  appropriate at this time to substitute new counsel.

4          Mr. Thorsen, are you Mr. Franklin's first lawyer?

5          MR. THORSEN:  I believe so, Your Honor.

6          MR. KAUFMAN:  Actually, Your Honor, we had issued

7  Mr. Franklin a target letter a very lengthy period of time

8  ago.  He had been represented for that target process by

9  Andrew Jennings.  There was a reverse proffer.  There's a lot

10  of history on this case.  And then ultimately when

11  Mr. Franklin refused to plead to a bill of information, we

12  then did the indictment.  And I think that -- I think that

13  probably what happened was after the refusal to plead to the

14  bill of information, that's when Mr. Jennings went into public

15  service.

16          THE COURT:  Okay.

17          MR. KAUFMAN:  And then we indicted and then I guess

18  Mr. Thorsen was the initial attorney on that.

19          THE COURT:  All right.  Well, that's helpful.  Thank

20  you very much.

21          Madam Clerk, will you make whatever minute entry you

22  believe is consistent with what I'm saying here.

23          The Court will substitute new counsel for

24  Mr. Thorsen.  Mr. Thorsen will be withdrawn from further

25  representation of Mr. Franklin.

1          I do want to emphasize here I'm not making any

2    judgment about any particular person here.  I'm not

3    criticizing anyone, Mr. Franklin, Mr. Thorsen, or anyone else.

4    I'm just making a practical judgment about what I believe is

5    best for the case.  Okay.

6          So the end result of this, Mr. Franklin, is that you

7    will have new counsel appointed by the Court.  That lawyer

8    will be selected for you by the federal defender and that

9    lawyer will be out to see you about your case.  I just beseech

10   you, please, to keep an open mind when you meet with that new

11   lawyer.  Understand that there are going to be some

12   limitations to what's possible.

13          THE DEFENDANT:  Yes.

14          THE COURT:  Please keep an open mind about what can

15   happen here and work carefully with your new lawyer.  Will you

16   do that?

17          THE DEFENDANT:  Yes.  Can I tell you something?

18          THE COURT:  In just a minute.

19          Mr. Thorsen, I thank you for your efforts and the

20   service that you provide in all the cases that you work in.

21   So we'll see you in another case soon, I'm sure.  I just think

22   that in this particular case, this makes the most sense so

23   we'll excuse you from further representation of Mr. Franklin

24   at this time.  But we thank you for the work that you did put

25   in.

1         Mr. Franklin, did you have something else that you

2 wanted to say?

3         THE DEFENDANT:  Yes.  I plan to appeal this stuff

4 and he has stuff in his files that I'm going to need for my

5 appeal.  Can you subpoena them files or whatever you need to

6 do so my new lawyer can have it?

7         THE COURT:  Well, it's traditional and it's

8 customary for lawyers in the bar to provide materials when a

9 new lawyer comes in.

10         THE DEFENDANT:  Okay.

11         THE COURT:  And I'm sure that Mr. Thorsen will

12 cooperate with a new lawyer in providing appropriate materials

13 to ensure a smooth transition.

14         Mr. Thorsen, is that right?

15         MR. THORSEN:  Absolutely, Your Honor.

16         THE COURT:  Okay.  So you don't need to worry about

17 that.

18         THE DEFENDANT:  Yeah.

19         THE COURT:  Okay.  All right.  Any questions?

20         MR. KAUFMAN:  No, Your Honor.

21         THE COURT:  Anybody?

22         MR. THORSEN:  No, Your Honor.

23         THE COURT:  Okay.  Good luck everyone.  Thank you

24 very much.

25         (End of proceedings.)

```
1   UNITED STATES DISTRICT COURT

2   WESTERN DISTRICT OF NORTH CAROLINA

3   CERTIFICATE OF REPORTER

4

5

6           I, Cheryl A. Nuccio, Federal Official Realtime Court

7   Reporter, in and for the United States District Court for the

8   Western District of North Carolina, do hereby certify that

9   pursuant to Section 753, Title 28, United States Code, that

10  the foregoing is a true and correct transcript of the

11  digitally-recorded proceedings, transcribed to the best of my

12  ability, held in the above-entitled matter and that the

13  transcript page format is in conformance with the regulations

14  of the Judicial Conference of the United States.

15

16          Dated this 31st day of May 2016.

17

18                      s/Cheryl A. Nuccio
                        _____
19                      Cheryl A. Nuccio, RMR-CRR
                        Official Court Reporter
20

21

22

23

24

25
```