UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

UNITED STATES OF AMERICA    )   DOCKET NO. 5:14-CR-81
                         )
       vs.             )
                         )
ROGER DALE FRANKLIN,      )
                         )
          Defendant.     )
_____)

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE RICHARD L. VOORHEES
UNITED STATES DISTRICT COURT JUDGE
FEBRUARY 29, 2016

APPEARANCES:

On Behalf of the Government:

    STEVEN KAUFMAN, ESQ.
    United States Attorney's Office
    227 West Trade Street, Suite 1700
    Charlotte, North Carolina

On Behalf of the Defendant:

    JAMES STEPHENS WEIDNER, JR.
    Law Office of James Weidner
    P.O. Box 241325
    Charlotte, North Carolina

               Cheryl A. Nuccio, RMR-CRR
                  Official Court Reporter
            United States District Court
              Charlotte, North Carolina

P R O C E E D I N G S

1

2          THE COURT:  Roger Dale Franklin, then, would be the

3   next matter.

4          MR. WEIDNER:  Good morning, Your Honor.

5          THE COURT:  Good morning.  How are you, Mr. Weidner?

6          MR. WEIDNER:  I'm fine.

7          THE COURT:  Good.

8          Okay.  Are the parties ready to begin?

9          MR. KAUFMAN:  Yes, Your Honor.

10         MR. WEIDNER:  Yes, Your Honor.

11         THE COURT:  Is your name Roger Dale Franklin?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And it appears the factual basis was

14   established by way of jury verdict in this matter on July 8,

15   2015, and that had to do with count one, conspiracy to possess

16   with intent to distribute methamphetamine; counts two, five,

17   eight, and nine, possession with intent to distribute

18   methamphetamine; count three, possession of a firearm by a

19   felon -- or strike that.  Possession of a firearm in

20   furtherance of a drug trafficking crime; four and seven are

21   possession of a firearm by a felon; and count six, possession

22   of a firearm in furtherance of a drug trafficking crime.

23         Do you believe you understand the nature of those

24   offenses?

25         THE DEFENDANT:  Yes.

1          THE COURT:  And the possible sentences?

2          THE DEFENDANT:  Sir?

3          THE COURT:  Do you understand the possible penalties

4    for those offenses?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Are you fully satisfied with the

7    services of your attorney in this matter?

8          THE DEFENDANT:  Not -- the attorney that I took to

9    trial with me, I'm not satisfied with him because he didn't do

10   anything to help me because I'm not guilty of these charges

11   and my lawyer wasn't worth a crap and he didn't do anything to

12   help me.  He did everything not -- he did everything he could

13   to get me convicted.  He told me not to take the stand.  That

14   there's no way that I could be convicted because I hadn't had

15   a gun or dope put in my hand.  He said that I wouldn't be

16   convicted if I wouldn't take the stand.

17         He didn't -- he didn't show the evidence -- I give

18   him a letter that one of the witnesses wrote me that said if I

19   didn't give her a car, she was going to testify that I was the

20   biggest drug dealer in the county and that I had guns.  I give

21   him this letter, he wouldn't present it.

22         I shouldn't be getting all this time and I'm not

23   guilty of all these charges.  My lawyer wasn't worth a crap.

24   And you was here.  Haakon Thorsen, you know him.  And I want

25   to ask if I can get a lawyer -- get another trial or get a

1  mistrial on that because there's no way that that could be

2  considered me having an attorney, you know.  I mean, he's not

3  an attorney.  I don't even know why he's allowed to come in

4  here.  He didn't do anything.

5          THE COURT:  Well, Mr. Weidner can assist you in any

6  motions that you feel should be filed and that would save you

7  the time of doing -- trying to do it either yourself or wait

8  for a new attorney.  One of the things he might do would be

9  ask for a new attorney.  And you would presumably have one --

10  a new one on appeal.

11          The jury verdict established the guilt of the

12  defendant and the factual basis.

13          Do you have a copy of the presentence report there

14  at counsel table?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have you read that and gone over it

17  carefully?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And did you discuss it with Mr. Weidner?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  Are there any outstanding

22  objections, Mr. Weidner?

23          MR. WEIDNER:  Your Honor, the only objection I made

24  would be the objections to certain criminal history points.

25  If I could just argue them briefly.

1          THE COURT:  Yes, sir.

2          MR. WEIDNER:  He was assigned criminal history

3     points.  We objected to them on the basis they were beyond --

4     these convictions that he was getting, these criminal history

5     points were beyond the 10 and the 15 year limitations in the

6     guidelines.

7          When you read the PSR originally -- as the Court's

8     aware, I did not represent Mr. Franklin at the trial.  I

9     actually came into the case pretty late, just -- basically, I

10    think even most of the PSR stuff had been done.  And so I

11    don't -- I haven't had the benefit of discovery.  I haven't

12    had the benefit of being present at the trial.  Everything

13    I've gone on with is what Mr. Franklin has told me or what

14    I've read in the PSR.

15         In the facts contained in the PSR, I mean, all the

16    actions, everything that Mr. Franklin is responsible for in

17    this -- in this case, it looks like they began around 2013,

18    around August of 2013.  Based on his involvement in the

19    conspiracy beginning in 2013, then a number of these criminal

20    history points should be removed due to the time limitations.

21         However, after I filed those objections, it's my

22    understanding the government gave a statement to the probation

23    officer from -- I think, the person's now been named.  It's

24    been filed into the record.  Stating that, no, Mr. Franklin

25    had been involved with this group since 2007.

1    So we're still asking that those criminal history
2  points be removed, which would make him -- I think it would
3  leave him with four criminal history points which would put
4  him in category III, I believe.  That's the only thing we're
5  asking, Your Honor.

6    THE COURT:  All right, sir.  Category III as opposed
7  to VI.

8    MR. WEIDNER:  Yes, sir.

9    THE COURT:  What do you say about that, Mr. Kaufman?

10    MR. KAUFMAN:  Your Honor, I apologize.  I had tried
11  to print out a copy of the debrief report with Chad Lowman.
12  He was interviewed by the Caldwell County Sheriff's Office as
13  part of the investigation back in March of 2014 which I
14  believe coincided close to the end of the conspiracy period.
15  But he provided information to the investigators in
16  Mr. Franklin's case and he is the basis for why the indictment
17  cites the 2007 starting period.

18    In the debrief report which I'm trying to call up on
19  the screen now, he stated that -- oh, here we go.  And, Your
20  Honor, this was part of discovery.  It was not evidence that
21  we elicited during the trial.  We had selected a few
22  cooperating witnesses to testify.  This is more of a
23  sentencing issue and based on the objections to the start
24  period of the conspiracy.

25    But I'm going down and in that March 2014 debriefing

1   he stated that he had known Mr. Franklin since 2000.  That he
2   had been working as a so-called muscle, meaning since 2007
3   that he was collecting drug debts on his behalf.  And that he
4   was still on -- sorry -- still on good terms with
5   Mr. Franklin.  So the conspiracy had not terminated.  And that
6   was the basis for the start period in the indictment as to
7   2007.
8        We believe that since there's a preponderance of the
9   evidence standard to apply to various sentencing factors with
10  regard to his criminal history score, the convictions that are
11  being challenged by the defense have not timed out and that
12  the PSR is correct in all matters.
13       THE COURT:  All right.  Given the evidence thus
14  presented, the objection would be overruled.
15       THE DEFENDANT:  What evidence?  I don't even know
16  this fella.  They ain't nobody --
17       MR. WEIDNER:  Mr. Franklin, just -- Your Honor, he
18  just -- he's told me he doesn't even know this man.
19       But I would also point out to the Court, Your Honor,
20  if you look at the criminal history, the arrest record from
21  2007 through 2014, there are numerous times when Mr. Franklin
22  is incarcerated.  You know, he's basically in and out of
23  prison and -- you know, so how we can say that this is the
24  same conspiracy that continued on especially when at the
25  trial, you know, no evidence, nothing was introduced beyond

1    2013 -- I mean, you know, before 2013.  That's just the only

2    other thing, Your Honor.  I understand you've made your

3    ruling, but...

4          THE COURT:  Well, given your statement you might

5    have an argument that he wasn't even the individual charged if

6    he was in jail and somebody is out there incurring charges in

7    his name.  Is that your contention?

8          MR. WEIDNER:  No, Your Honor.  I'm just saying that

9    they're saying that he was involved in this -- that this was

10   the same conspiracy, the one for which he went to trial and --

11   it was all one conspiracy that went from 2007 forward.  What

12   I'm saying is that they presented the Court with one statement

13   from one person that's saying that he was doing this, but how

14   does the Court know it's the same conspiracy?  And when you --

15   especially when you look at his criminal history which is what

16   we're talking about.

17         I mean, you know, since 2007 he's been incarcerated

18   one, two, three, it looks like five times, you know, at

19   various times.  In 2007, 2008, 2010, 2011.  So when you look

20   at that, that he's in and out of jail -- now, none of it is

21   extended periods of time, but he's still -- I mean, the man is

22   going in and out of jail and then, you know, they're trying to

23   say this is the same conspiracy when there was no evidence of

24   it at the trial.  Basing that on one statement they're now

25   bringing to the Court.  I'm just saying that that should be

1   insufficient.

2            THE COURT:  Well, I understand your argument.

3            MR. WEIDNER:  Yes, sir.

4            THE COURT:  However, the preponderance of the

5   evidence is the standard and that's the only evidence I have

6   pertaining to that period of time.  And it would appear to

7   indicate that the convictions are properly scored.

8            So that being the only objection, the Court will

9   adopt the presentence report for all purposes of sentencing,

10  finding it accurately assesses the criminal history at VI and

11  the offense level at 36.

12           MR. KAUFMAN:  And Your Honor, I believe that as the

13  PSR in paragraph -- sorry, Your Honor, paragraph 147 and

14  paragraph 37, the total offense level is 35, the Roman

15  category is VI, resulting in an advisory guidelines range of

16  292 to 365.

17           THE COURT:  The probation officer says it's 292 to

18  365.

19           MR. KAUFMAN:  Yes, Your Honor, we agree.

20           THE COURT:  All right.  Thank you for that

21  correction.

22           Okay.  You may be heard, Mr. Weidner, on the matter

23  of an appropriate sentence.  The Court finds the presentence

24  report credible and reliable.

25           MR. WEIDNER:  Your Honor, when looking at the

1  elements of 3553 to determine, you have to look at the
2  character of the person before you, the crimes that he's been
3  convicted of and a necessary sentence.

4          In this case, Your Honor, Mr. Franklin is looking at
5  a sentence right now of somewhere, according to the
6  guidelines, around 55 years if the Court goes with, you know,
7  the guideline range and doesn't think that he should get life.
8  I just don't -- you know, it just doesn't seem like this is
9  going to be -- is a necessary sentence.  This man is in his
10  fifties.  You know, a sentence -- you know, any kind of
11  sentence, you know, over 30 or 40 years is essentially going
12  to be a life sentence for him.  He'll die in prison.

13          And I think the question the Court has to ask itself
14  now, does that seem to be reasonable and that's what we want
15  to have happen in this case?

16          Mr. Franklin has indicated he had -- he would like
17  to say something also, Your Honor.

18          THE COURT:  All right.  Mr. Franklin.

19          THE DEFENDANT:  I've worked my whole life.  The
20  people that come up here and said that I sell dope for a
21  living, none of them has ever had a job.  The last four years
22  I was on the street before I come in here, I worked for a
23  company here in Charlotte.  It's Carolina Construction
24  Solutions.  Every job we get it's seven days a week work.
25  When I worked over here at the hospital, it's 12 hours a day

1   and the rest of the jobs have been 10 hours a day.  I been
2   working with them since before 2010, the end of 2009.  I've
3   never missed a day.  I've never been late a day.  I cannot be
4   out here selling drugs and doing this stuff and hold a job
5   like that.  It's on record.
6           Everything that's been said about me in this place
7   is a lie.  They know it's a lie.  You was here when that sorry
8   ass lawyer they give me -- here's what happened.  They dragged
9   me in here and charged me with something I didn't do.  They
10  put me in a cell up there.  I couldn't even get a copy of how
11  much time that I've been in jail.  I've wrote -- I wrote Burke
12  County over there, the clerk of court, to try to get papers to
13  prove that the cop over there lied.  She said she got me with
14  six bags of meth.  Why didn't she charge me with it.  I wasn't
15  even charged with that.
16          Anyway, everything about this whole thing is a damn
17  lie.  I am not a drug dealer.  I work for a living.  The only
18  reason that I got drug in it is because I had money in my
19  pocket and the reason I had that is because one of the girls
20  that was -- that drug me in this mess was stealing my money
21  and my dad's money out of the bank and it happened twice at my
22  bank.  My bank account got wiped out.  So I quit putting my
23  money in the bank and started carrying it in my pocket.  And I
24  got proof of all this.
25          But I didn't -- I had Haakon Thorsen for a lawyer

1    and he wouldn't present none of the evidence.  He told me that

2    I wouldn't -- that I wouldn't be found guilty.

3           But you tell me somebody that can work seven days a

4    week -- and I live on the other side of north.  I drove to

5    Charlotte.  I've either worked in Charlotte or Dallas right

6    over here or Gastonia hospital or Asheville.  It takes me

7    3-1/2, 4 hours a day to get to work and back not counting the

8    10 or 12 hours I work every day.  Now, how am I over here in

9    Lenoir selling drugs when I'm on the damn job 70 hours a week

10   and then 4 more hours every day on the highway riding.  It's

11   impossible.

12          This dude, the one guy come in here and said he sold

13   me an ounce of dope every week for 18 months.  Said from the

14   time his man got busted, he sold me an ounce of dope every

15   week for 18 months.  Well, from the time his man got busted in

16   April, I was in jail in August.  That's what, four or five

17   months or something like that.  And ain't no damn way that's

18   true.  It's a lie.  Everything about it is a lie.

19          One girl says that I had -- that the dope they

20   caught her with was mine.  And her friend that was in jail

21   with her says, I know that he was over there -- well, they

22   said they was taking me to hunt dope.  They said I had 12

23   ounce -- 12 grams on me.  I don't know why I was hunting it.

24          One girl tells -- comes in here and says that she

25   knows that I was over there hunting dope because she needed

1  two eight balls and I didn't have but one.  I give her one.

2  And so Lisa was taking me to hunt dope so I could bring her

3  back another eight ball.  Well, they said that I had 12 grams

4  on me is the reason I'm here.

5         Every -- everything is a lie.  They know it's a lie.

6  He's -- he gets people -- he pays people to give them breaks,

7  he cooks the damn sentences to come in here and tell a lie.

8  It's the awfulest thing I ever seen.  The whole damn -- this

9  courtroom, everybody in it is a liar and a crook.

10        Now, that's it.  That's what's up.  I'm not a drug

11  dealer.  I worked for a living.  I've never been a drug

12  dealer.

13        THE COURT:  All right, sir.  Thank you.

14        Will there be anything further, Mr. Weidner?

15        MR. WEIDNER:  No, Your Honor.

16        THE COURT:  Mr. Kaufman.

17        MR. KAUFMAN:  Thank you, Your Honor.

18        Mr. Franklin comes to a criminal history category of

19  VI not because he's a career offender.  Although, while he's

20  not a career offender under the guidelines, he has a life of

21  crime that started with his first conviction in 1983.  He has

22  other arrests that did not result in convictions before that.

23  But he ultimately has an extraordinarily long criminal history

24  not only in terms of his convictions that include numerous

25  driving under the influence, driving while intoxicated

1   convictions, resisting officer multiple times, threats, and,

2   you know, just refusing to comply with orders of the court

3   with numerous DWLRs. He's got arrests for violent crimes,

4   including armed robbery. I counted over a dozen charges of

5   assault on female in violation of domestic violence protection

6   orders, trespass, felony larceny, assault with a dangerous

7   weapon.

8         Ultimately, Your Honor, while it's Mr. Franklin's

9   right to invoke his right -- constitutional right to trial, we

10   don't believe that he is an individual who should receive a

11   downward variance; that a guideline sentence is sufficient but

12   not greater than necessary in this case. We don't oppose a

13   sentence at the bottom end of the guidelines range which for

14   count one would be 292 months. And then, of course, the total

15   sentence is going to be increased by the required sentences

16   for the 5 years for the first 924(c) and 25 years for the

17   second 924(c). Thank you.

18         THE DEFENDANT: Your Honor, the driving charges I've

19   done, the DWIs and the driving while revoked. I've never left

20   a mark on a woman. I've never been convicted of assault on a

21   woman. It's the same lying girl that's -- she put me in jail

22   and then sells everything I got. I couldn't get rid of her.

23   But I've never been convicted of it. And I didn't pay the

24   money to get it dropped. I stayed in jail until they

25   dismissed it. I ain't never pled guilty to one. I ain't

1   never been found guilty.  I ain't smacked -- I ain't beat up

2   no girl.  And the violent charges, I ain't done no violent

3   charges.  The driving and the drinking and stuff, now I've

4   done that.

5          THE COURT:  All right.  It appears there are ten

6   DUIs, ages 21, 24, 24, 25, 27, 28, 28, 29, 30, habitual

7   impaired driving at 30, and then 34.  Well, strike -- let's

8   see.

9          Strictly DUIs are age 21, 25, 27, 28, 28, 30, 34.

10         There's resisting arrest, age 28, 33, 40, 49.  49

11  was criminal contempt.

12         46, injury to personal property and communicating

13  threats.

14         It is an amazing litany of charges without

15  convictions, that is to say, dismissals, apart from the ones

16  that were dismissed in connection with convictions.  But as

17  the government recites, the charges include a virtual criminal

18  law book of offenses.  Fifty-two dismissed charges.  Eighteen

19  assault on a female.  Violating a protective order, four

20  charges.  Assault with a deadly weapon, four dismissals.

21  Threats, eight dismissals.

22         So it certainly has kept the law enforcement busy.

23  But it remains that the number of points scored were 15 which

24  is, of course, 2 over the 13 required for criminal history

25  category VI.  So it's a serious criminal record and a

1  tremendous amount of exposure to law enforcement actions, many
2  of which did result in dismissal.
3         The mandatory sentences by themselves would total 35
4  years, 10 on count one and 20 on -- 25 on count six, 5 on
5  count three.  The latter two being consecutive by law.
6         MR. KAUFMAN:  And Your Honor, I believe it's
7  actually 40, 10 for count one, a consecutive 5 for count
8  three, and a consecutive 25 for count six.
9         THE COURT:  I was thinking that's what I said.  If I
10  said something different, I think you're correct.
11         MR. KAUFMAN:  Thank you, Your Honor.
12         THE COURT:  So that's a total of 40 that were
13  required.
14         Defendant is 54 years old.
15         The Court does not credit the statements concerning
16  the credibility of the witnesses.  That was for the jury and
17  the jury evidently believed the witnesses.
18         THE DEFENDANT:  That's because I had a stupid
19  lawyer.  I didn't have the money to buy one.
20         THE COURT:  I heard you on that.  I heard you on
21  that regard.
22         THE DEFENDANT:  I'm getting life in prison over that
23  stupid ass lawyer.
24         THE COURT:  So the indictment charges some
25  seven-year conspiracy.

1      Well, for the purposes of the guidelines, the Court
2 is directed to 18, U.S. Code, 3553(a). Defendant argues that
3 the important facet of that is that the indicated sentence of
4 292 months minimum under count one, which is where the Court
5 has discretion, is not necessary and more than sufficient to
6 serve the purposes of 3553(a). That a guideline sentence
7 would be some 55 years or more in total. That that is --
8 moreover, it's not reasonable.
9      Defendant indicates that he worked his whole life
10 and therefore couldn't have been engaged in the conspiracy as
11 alleged. The presentence report does indicate that he worked
12 for several years leading up to 2013 for Carolina Construction
13 Solutions in Charlotte where he was employed as a mechanic.
14 The Court has no other information about his employment other
15 than he left employment to take care of his elderly father.
16      And defendant further argues that the witnesses
17 against him were lying.
18      So looking at the nature and circumstances of the
19 offense, there really isn't anything mitigating about it.
20      History and characteristics of the defendant,
21 assuming he did work his whole life as he says, doesn't
22 prevent -- doesn't present a barrier to the notion that he was
23 also a drug dealer. The sentence, nevertheless, should
24 reflect the seriousness of the offense.
25      Now, just punishment is where the defendant's

1    argument bears weight because you have to look at the entire
2    sentence, including the mandatory elements of it, in arriving
3    at a just punishment.
4            And also the need to protect the public is greatly
5    diminished where defendant would likely be over 90 when he is
6    eligible for release.
7            So given those factors, the Court will sentence as
8    follows:
9            Pursuant to the Sentencing Reform Act of 1984, the
10   *Booker* case, and 18, U.S. Code, 3553(a), defendant is
11   committed to the custody of the Bureau of Prisons for a term
12   of 120 months on count one, 240 months on counts two, five,
13   eight, and nine -- strike that, 120 also there.  And then --
14   that's all concurrent.  And then 120 months on counts four and
15   seven to be served concurrently; then a term of 5 years
16   consecutive on count three; and a term of 25 years consecutive
17   on count six.
18           I believe that adds up to 480 months.  And that is
19   sufficient but not greater than necessary to serve the
20   purposes under 3553(a).
21           The Court recommends the substance abuse program,
22   18, U.S. Code, 3621(e)(2).
23           Upon release he'll be on supervised release for five
24   years, that's on counts one, three, and six; and terms of
25   three years on each of counts two, four, five, seven, eight,

1 and nine, all running concurrently.

2      Within 72 hours of release from the custody of the

3 Bureau of Prisons, defendant shall report in person to the

4 probation office in the district to which he is released.

5      While on supervised release, he shall not commit

6 another federal, state or local crime, and shall comply with

7 the standard conditions adopted by the Court.

8      It is further ordered that he pay the United States

9 a special assessment of $900.

10      He does not have the ability to pay a fine or

11 interest or attorney's fees so those items are waived.

12      His special assessment is due immediately.

13      He shall forfeit his interest in any properties

14 identified by the United States and the Court will incorporate

15 into the judgment the consent order and judgment of

16 forfeiture, document number 39 in the history of the case.

17      Would he wish to be placed as close to his home as

18 possible?

19      MR. WEIDNER:  As close to his home as possible, Your

20 Honor.  I believe his home is Hickory, North Carolina.

21      THE COURT:  All right.  I'll make that

22 recommendation.

23      THE PROBATION OFFICER:  Your Honor...

24      THE COURT:  There's some indications that he has

25 medical needs which the Court would recommend the prison

1    system address promptly.

2            The record indicates he consumed an 18 pack of beer

3    a day for 20 years.  Any reason to dispute that?

4            THE DEFENDANT:  (Negative nod.)

5            MR. WEIDNER:  No, sir.

6            THE COURT:  All right.  That could account for many

7    of these offenses as one cause, an incidental fact.

8            The Court recommends access to educational and

9    vocational opportunities.

10           The defendant does have a GED.

11           Anything further?

12           MR. KAUFMAN:  No, Your Honor.

13           MR. WEIDNER:  No, Your Honor.

14           THE COURT:  All right.

15           Yes, ma'am.

16           THE PROBATION OFFICER:  Your Honor, am I correct

17   that you're varying to an offense level of 26?

18           THE COURT:  That's correct.

19           THE PROBATION OFFICER:  Thank you, Your Honor.

20           THE COURT:  That's nine levels.  Thank you very

21   much.

22           You have a right to appeal, sir.  To do that you

23   would have to give a written notice to the clerk of this court

24   within 14 days after the Court files its sentencing judgment

25   resulting from today's hearing.  You may appeal without

1   prepayment of costs since you've been found to be indigent.

2   Your attorney or the clerk of court would fill out a notice of

3   appeal for you if you asked one of them to do that.

4            Thank you all.

5            (End of proceedings at 10:54 a.m.)

6                              *****

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    UNITED STATES DISTRICT COURT

2    WESTERN DISTRICT OF NORTH CAROLINA

3    CERTIFICATE OF REPORTER

4

5

6               I, Cheryl A. Nuccio, Federal Official Realtime Court

7    Reporter, in and for the United States District Court for the

8    Western District of North Carolina, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code, that

10   the foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is

13   in conformance with the regulations of the Judicial Conference

14   of the United States.

15

16               Dated this 31st day of May 2016.

17

18

19                         s/Cheryl A. Nuccio
                           _____
20                         Cheryl A. Nuccio, RMR-CRR
                           Official Court Reporter
21

22

23

24

25
```